Good morning. May it please the court. My name is George Reedes and I'm appearing on behalf of Petitioner Devinder Singh in his appeal of the agency's decision denying his claims for asylum, withholding of removal, and convention against torture. You know what? It may be this room. I don't know. Acoustics may be poor. And I know you're talking. I can hear your voice. But if you ask me to tell you what you just said, I couldn't do it. I apologize, Your Honor. I'll try to speak more clearly. In this case, the Board of Immigration Appeals adopted and affirmed the immigration judge's decision. The immigration judge denied asylum and withholding of removal based on her finding that there was an insufficient nexus between the harm that petitioner suffered at the hands of the Indian police and one of the protected grounds. And the judge also denied withholding of removal under the convention against torture summarily at the end of the decision. For the nexus issue, it is my understanding that the court's review is under the de novo standard, which is a less deferential standard of review, because this is a question of law where the facts are not in dispute, as the immigration judge found the petitioner to be a credible witness. The petitioner testified that he was arrested three times and on all occasions was detained, beaten, and then released upon payment of a bribe. The immigration judge found that the motivation, the police's motivation for the arrest was as part of their official function of investigating criminal activity. Now, the petitioner will argue that although one of the motivations of the police may have been a legitimate police investigation and may in fact have initially been its sole motivation, that the manner in which that he was treated and facts subsequent to his first arrest can only lead to the conclusion that there were other motivations for the police's conduct. And what is the best evidence in the record that there was a mixed motive on the part of the police? The immigration judge found that based on petitioner's testimony that there was no due process afforded to him in terms of a warrant for his arrest or any official hearing before a magistrate or a court of law or any official charge levied against him. He was simply detained for a matter of days, beaten severely that would go beyond what the immigration judge termed as merely heavy-handed tactics. He was actually beaten and testified that he lost consciousness on multiple occasions as a result of his beatings, and then he was released after payments of bribes, I believe the last bribe in excess of 100,000 rupees. So petitioner would argue that based on all the facts of his case which are not in dispute, by the manner in which he was treated, by the manner in which that a so-called investigation was conducted, that the motivation is not simply a legitimate police investigation, it goes beyond that. And it's actually a motivation, the police motive to suppress a political opinion here, to suppress activities that are detrimental to the Indian government. I'd like to move on to petitioner's appeal of the immigration judge's decision relating to the Convention Against Torture. In this case, the immigration judge essentially appears to deny Convention Against Torture for the same reasons that she denied Asana withholding, but nexuses should not be an issue for Convention Against Torture. The judge must assess whether or not the harm suffered by petitioner rises to the level of torture under the federal regulations. The immigration judge never made an official finding as to whether or not the harm petitioner suffered amounts to torture, and moreover, the immigration judge did not consider any other evidence in the record which she was bound to do, which includes not only past torture, but the possibility of petitioner's ability to relocate to avoid torture, as well as prevailing country condition reports that were in the record. I believe on page 239 of the record, I think which is the 2004 State Department report, it clearly says that there's an ongoing extrajudicial abuses occurring in India, and especially I think it actually says extrajudicial killings of criminals and suspected criminals that is ongoing in many of the states of India. So based on the severe torture, which included wooden roller torture on his legs on the occasion of his last arrest, being hanged with a pulley system on the occasion of at least one of his arrests, and just the severity of the beatings he suffered, which caused him to lose consciousness on multiple occasions, that is clearly torture. And so on account of the torture he suffered, on account of the many arrests he suffered, and account of the prevailing country condition information that we have in this record, the immigration judge's analysis of Kat was erroneous and must be overturned. Let me ask you about country conditions, which you just mentioned. Yes, Your Honor. Well, there is a balancing of the factors, I believe, Your Honor. If relocation is possible, and in this case I do not believe it is, although the record shows that, in the sense that the record shows that Petitioner is a poor Sikh farmer from the north who likely only speaks the Punjabi language and is clearly identifiable as a Sikh. It doesn't do any better in the United States as far as language is concerned, because we don't normally speak any of it. Yes, Your Honor. So in theory, he wouldn't have to worry about being tortured. In a state where he can go and live in peace, even though he doesn't understand the language any more than we understand his language, why not send him back? Why defer deportation? I agree, Your Honor. What does the treaty tell me I have to do? Because a treaty is the law of the United States, and I have to abide by that. Yes, Your Honor. I just think that the federal regulations say that it's one factor. No, I don't want to talk about regulations. I want to know what the treaty says. In the sense that maybe I'm misunderstanding your question, Your Honor. Treaty is law in the United States, right? Yes, Your Honor. Well, I can't speak to that, Your Honor. I don't know. I just know that there are cases in our circuit where past torture alone may be enough of a factor to accord an applicant Convention Against Torture. And that under our case law, we balance factors to determine whether somebody should be accorded this relief. As far as what the Convention Against Torture says, I just assume that the federal regulations interpret what that says and allows us to apply certain standards to see if an applicant deserves that relief. And so in this case, sure, that's one factor, that maybe there is a state that he can relocate to where he will not suffer torture. However, I believe that based on the other elements of your appeal, then he goes, right? If I lose asylum and torture? First of all, you're claiming persecution, right? Yes, Your Honor. Okay, so if he's persecuted and you lose on that, in other words, he provoked whatever's going on. But you still, if you send him back and he's going to be tortured, and it's inevitable, regardless of where you send him in India, that he's going to be tortured. Then the Convention Against Torture is law of the United States and requires us to, and the BIA, to withhold deportation. Yes, I agree. And I'm asking, is there any place in India where he could be sent on return where he would not be tortured? Well, of course I'm going to say no, Your Honor, based on the... So the torture is just as bad in every province and state of India, in the huge country it is? Just as bad? Of course not. I can't say that. But what I'm saying is that our reports say, our own State Department report says that these extrajudicial killings of criminals and suspected criminals occur in many states. Yes, Your Honor, but I would submit that there's nothing on the record to show any type of relocation argument that you're... You're claiming the cat relief and you have to show me that the possibility of him being sent to India, to a tranquil state, is not available to him. You have to show me that... Yes, it's the Petitioner's burden. If the country reports that this goes on in every province, every state of India, I would not hesitate to keep him here until things settle down in India. Well, beyond the country condition reports, Your Honor, there's no evidence other than Petitioner's testimony that can be submitted on this point. Because of his identity as a Khalistan supporter and on account of the fact that he believed that he could be tracked in any part of India. And essentially that's his best evidence. And that, coupled with the amount of torture he's already suffered, his past arrests, the fact that the Indian government is still searching for him, according to his testimony, as late as 2004, and coupled with the country condition reports, not just the State Department report, but the rest of Petitioner's documents of background evidence, we think that the immigration judge erred in summarily denying his claim, which seemed like a conflating of issues between nexus and torture, and did not assess any other factors that she was required to assess. Was there any finding on relocation? No, Your Honor. I just believe she reiterated an argument that, which I believe is a fallacious argument, that country conditions had improved to the point where torture was not more than likely to occur. On a countrywide basis or on a provincial basis? I think it was countrywide, Your Honor. Let me check. I believe it's on page. Well, let's hear from counsel for the BIA on this, and then I'm still interested in the question. Good morning. May it please the Court. Russell Verber, on behalf of Attorney General Michael McCasey, obviously. Would you mind starting with the CAT claims in your analysis, because I think that's where we ended up, and I might want to continue the discussion on that a bit, if you don't mind. Yes, Your Honor. Basically, to answer Judge Farris's question, the way that the Convention Against Torture applies to the United States is that we cannot I'm sorry, Judge, I'm sorry. They've got it reversed here. Yeah, I've seen it happen before. As a father of triplets, you'd think I'd pick up on that. The problem, Your Honor, when the Convention of Torture, we cannot remove a person to their home of nationality if there is a likelihood that they will be tortured in the future. Motive doesn't necessarily come into it, but in a case like this, where the alien claims the torture results from a specific situation, in this case, the militancy of the Sikh in the Punjab and Hanyara regions, or province, however you want to put it, in India, there is then the consideration of have the country conditions changed. And in this situation, as noted in all the country conditions reports, the militancy has abated. And with the abatement of the militancy, you also have a ratcheting down of police activities and the establishment of, or attempted establishment, at least, of commissions to investigate police activities, rein in police activities. And it also, by its implication, is that the threat of torture to this alien is limited to those parts of the country where the militancy was active and the resulting police response to it may have been very detrimental. And so there is, in essence, an implicit or implied holding that this alien could relocate to a safer part of his homeland. The problem I have with the Kat claim, as it was analyzed by the IJ first and then the BI, is that the IJ seemed to conflate Kat claim with the asylum elements. In other words, it said you can't meet the higher burden, and that would be certainly appropriate for withholding the finding. But how are we to interpret what she did as to the Kat claim? I agree that the decision isn't as absolutely clear on the Kat claim as it is with respect to asylum withholding, but all of the elements that go into the decision are there. I'm sorry, I keep saying substantial, but the more likely than not standard was applied. Is it more likely than not this alien will be persecuted when it goes to withholding? Obviously, it's not based on the motives of the police were prosecutorial, not persecutorial. And then on top of that, if you go from there, torture is a more extreme form of conduct than persecution. Well, you're not arguing that he didn't suffer persecution. The torture was severe in this case. Quite severe. I'm restrained, in a sense, by the immigration judge's ruling that there was no finding of torture and there was no finding of persecution because this was a prosecution investigation. We may not. I think it was the nexus argument that the I.J. relied on, that the petitioner failed in the I.J.'s view to meet the on-account of prompt. I don't think there's anything in the opinion, unless I'm wrong, that indicates that she didn't believe that he was persecuted within the meaning of, or that the activity didn't rise to the level of persecution. And I don't think really you can argue that. I think it's a matter of your own understanding. Persecution is actually harm on account of a particular protected characteristic. In this situation, the immigration judge agreed. You suffered harm, horrendous harm. Well, past persecution as a legal concept, that's true. But when we look at the concept of past persecution, we look at, one, does the harm rise to the level of persecution? And, two, was it on account of? We don't say, well, because it's on account of, you weren't hurt. That's just not part of the analysis. No, so getting to, I think, Judge Peter's point, he did suffer persecution within the meaning of harm. Certainly, yes. The harm was horrible. We would never tolerate it here in the United States. No, certainly. But the issue is on account of what was the motivation of the police as they acted. And in this situation, we may abhor it. We may find it completely horrible, and our police would never be permitted to do anything along these lines, even in pursuit of a legitimate police objective. But in this case, the immigration fund, the nexus was lacking because the conduct was suffered not on account of political or religious beliefs, but because the police were engaged in a police enforcement activity against the militancy trying to tamp down terrorism. That's where this galley is playing telephone. The harm we agree on, the on account of link of persecution is missing in this case. How do you deal with our line of cases that indicate that if you repeatedly arrest a person without filing a formal prosecution that we presume that it's on account of? Well, the key to that, Your Honor, has to be looking at not from the fact that you have serial arrests, but is there no other legitimate explanation? And I believe that comes from Navas and Dinu, those two opinions. Is there no other legitimate explanation for what the police were doing? In this situation, we don't have the police storming into a person's residence, arresting them, hauling them off to jail, beating them for four or five days, and then releasing them, going back and doing the same thing. What we have is the police arresting somebody without a warrant, treating them terribly. I admit that, Your Honor. But you have to look at what the petitioner's own admissions were. They kept asking me questions about the militants. Who was I supporting? That could exist in this case. This isn't devoid of a legitimate basis that would put it under the line of cases that you talked about, which would be Navas, Dinu, Singh, and the other cases. Well, it struck me in this case that I'm not sure the argument is made, but it's certainly an imputed political opinion. They think he's a militant, and he may not be a militant. And we have the guerrilla cases. If they think you're a guerrilla, even if you're a guerrilla fighter, that it's a case of imputed political opinion. Why doesn't that fit here? I'm not exactly sure there was concrete evidence of an imputed political opinion, because as I just said a moment ago, the questioning was targeted at who have you worked with. He wasn't necessarily this is what we do to people who help the militants, because we view you as just as bad as any other militant. There were derogatory comments made, but you have to look at the overall force of what the police were doing. And in this case, it was targeting this man, because he's the link to the bigger fish that they want. The people they're really after are not the person who may be harboring them on their farm, but the targeted militant, the terrorist, the person who is using violence to advance a political and religious agenda against the government of India. Is there anything in the record that shows this is a statewide, I mean a countrywide concern? No, Your Honor. If you look at the State Department reports, the issues with respect to the KCF or those other groups, the splinter groups that want Khalistan are confined basically to the Sikh provinces, which are Punjab and Kanyara. And is there anything in the rules or regulations that deal with a state that has dual areas of concern? There's torture in one and not in the other. Well, that goes down to is relocation available, and that's part of the regulations that were fostered by the Attorney General in response to the obligations placed on the United States with respect to the Convention Against Torture and with how we apply the asylum laws in the United States. Those are not treaty-based. Those are laws of the U.S. We are not a signer to the Asylum and Refugee Acts of the U.N. Well, we certainly have granted a lot of relief to Sikhs. Absolutely, Your Honor. Even despite the fact that we've had all the same country condition reports all these years. It's funny. I'd have to say, Your Honor, that most of the relief that comes out of this Court with respect to Sikh cases are where there was adverse credibility findings, and they're being sent back for now merits determination as to whether the conduct endured qualified as asylum. There are cases where Sikhs have been granted asylum on the merits, but I think the majority of Sikh cases were adverse credibility type cases. So just a little bit of a shortcut. Well, we have thousands of them, so they're plentiful. Oh, absolutely. It's tough to identify all the same cases. Well, I think the question is our country could be the question, I suppose, that confronting the BIA now is whether or not the country conditions have changed in the Punjab, which they may well have. And the State Department reports indicate that, which this Court has accepted State Department court reports as having a significant amount of credibility in this area. If we were to enter or write an opinion in this case that said the only withhold on this deportation was the Convention Against Torture, how is that administered post-judgment? He stays around for 10 days, and then you decide it's time to go? Well, Your Honor, he'll stay here, obviously, until the court's mandate is issued and a stay is lifted, and then until travel arrangements can be made. It won't be a stay that we entered. We just say that, in essence, based on this record, the threat of torture is available or there's areas in India that are sufficiently calm where torture would not be implemented. Or we say the whole state is we look at the state report and we say the potential is statewide, and we grant him a stay of deportation. How is that stay lifted? Oh, if you were to keep the stay in place, Your Honor, I'm saying. If you were to grant his petition for review and he would be protected. I think the question is, if we granted the petition for review on the cat climb alone, what would happen procedurally? He's allowed to stay here as an alien who is under protected status as a person who is being protected by the Convention Against Torture. He will not be given lawful permanent residence, nor will be eligible for citizenship. Does he stay here until he dies? He'll stay here until he dies, Your Honor, he's permitted to live here, or until conditions sufficiently change in his country that it's safe for him to retire. Well, that's if we granted relief entirely under the cat. If we said we don't think the BIA nor the IJ conducted a proper cat analysis, then it would go back for a rehearing in front of the BIA or the IJ to determine whether or not he qualified for cat relief in their judgment, right? Correct, Your Honor. Yeah. I mean, the difficulty I have in this case is it doesn't appear that the IJ really did a cat analysis and the BIA just rubber-stamped it, basically. Your Honor. I mean, there's no relocation finding that I see on this record. Certainly, the IJ didn't go through the four factors that we've articulated for cat relief. I mean, that's my problem, and I guess we've got to look at it. And I can see, Your Honor, I can see the problem and the frustration the Court must feel, but I think if you look at it, it is there kind of in the shorthand in this situation with respect to how this historically has been an issue limited to two provinces, and now it's even evaporating within those two provinces. It's sort of by omission saying the rest of this country is a safe place for this alien to be. I think that's where we're coming to at this point with respect to seek claims. Well, perhaps, but that, I mean, you can always take that up if we reverse on cat and make the argument, and then that will come up to us on a record and a finding. Absolutely, Your Honor. If there are no further questions, that's going to conclude. What I'm assuming from this record is that there was, at a time, a province where there were people who favored a separate state and that those people used violence or what one might call terrorist methods to bring about the result. Some did, Your Honor. Some did and some didn't. And this person was accused of harboring and protecting those people who were involved in the terrorist activities. That's correct, Your Honor. And isn't that the state of the record? He was associated with them, yes, Your Honor. Yes. All right. And each time he was taken to be tortured, if you want to say tortured or persecuted, but each time he was taken by the police, he was taken as a result of a report that he had either harbored or protected in some way those people. By the aid of the people the police were seeking. That they were seeking. And that's this record, which differs, in your view at least, from the other record where someone is just picked up and taken in by police. Where the person is just picked up, taken in by the police and harmed. Or picked up, taken in by the police, harmed, and then a trumped-up charge is put against them to cover up. That's the dichotomy in this situation. Well, I guess, gathered from this record, the IJ didn't do a mixed motive analysis. The IJ just said the sole reason in her view of the police action was prosecutorial. Yes, sir. And I think that comes out of the petitioner's own testimony. His own testimony was I was always asked questions. The police would come to my car, look around, ask me questions. They did it on more than a dozen occasions. Then the police came and arrested me three times. And my interrogation centered around who was there, who did I help, what was I doing to support, and where can I find, where can we find these people? So I think mixed motive really didn't necessarily come into it, because the alien didn't necessarily present it as a mixed motive case. He presented it as these are the facts, and I want protection based on those facts. Not clearly explaining that while it may look like prosecution, there was another motive. There was actual persecution in the sense that they were targeting me, not just who I knew. Well, I guess the best evidence on the record showing a mixed motive were the statements that are anti-Calistan and stop supporting them, that sort of thing. General presence statements, yes, Your Honor. What's the bottom line, in your opinion, in this court's ruling? You're going to rebut, and you might want to know what he thinks is a summarizing statement. So go ahead. Bottom line of the decision, Your Honor, this is a substantial evidence case, so it's not enough for the court to simply disagree with the immigration judge's determination. The evidence has to compel a different result, meaning no reasonable fact finder could find the way the immigration judge did. The immigration judge found that there was primarily a prosecution, although we may not agree with the means, there was a prosecution motive, not a selective harm on account of a protected characteristic motive for what went on here. On top of that, with respect to the torture claim, while this alien has suffered some severe amounts of punishment and harm, there is no likelihood of torture in this case because, number one, the reasons that the harm could be called as alien have abated with respect to the change in country conditions. And by talking about those two provinces, the judge has made an implicit finding that there are other provinces within the state of India where this alien is. I don't find any statement of the BIA that says that. Well, adopt and affirm, Your Honor, which we work with these days, the way the regulations are written. Looking to the immigration judge's decision, you narrow it down, and it leaves you with the greater impression that there is a place for this alien to live. If there are no further questions, I'll conclude the Attorney General's presentation. Thank you. Thank you. Rebuttal. Go wherever you want to go, but at some point you want to go right to his bottom line. Bottom line, Your Honor, about the nexus issue, I would argue that he did present a mixed motive case through the facts that he presented in his testimony. He essentially testified that after his first arrest and release, he ceased all involvement with the Khalistan movement, meeting with Khalistani supporters. And nevertheless, the police regularly would I ---- You see, the record doesn't show that, though. It doesn't show regularly. Somebody reported to the police each time the police picked him up that he had harbored them or helped them in some way.  No, Your Honor. Between his first arrest and his second arrest, the police arbitrarily came to his house to check up on him, which can only be construed as harassment intended to suppress his political opinion. To get the names of the people. Yes, Your Honor. I mean, it was just completely arbitrarily and random. The second arrest was ---- What precipitated the second arrest was the fact that a leader of the Khalistan Commando Force had been murdered. And, therefore, they ---- I would argue that it was a pretext for rounding up anybody who had ever been suspected of harboring militants or having any involvement with the Khalistan movement and the Khalistan separatist movement. And so the third arrest, again, was based on the death of another, which I think the record says is an assistant of one of the leaders of the Khalistan Commando Force. So, yes, on the first occasion, there was a tip, an anonymous tip, or some sort of tip from the villagers and neighbors of the petitioner that caused the police to investigate his first arrest. But thereafter, we must ask the question, what is the motivation of the police after the first arrest to continue to harass this gentleman when he had no involvement whatsoever after his first arrest with any Khalistani elements? So that would be my bottom line about the nexus issue. With the torture issue, as Judge Thomas stated earlier, the judge's decision is simply inadequate. There's no analysis whatsoever as required under the regulations. Now, yes, in this case, there are issues of relocation and countrywide persecution or countrywide torture, but there must be a preliminary and a proper ruling about persecution and whether or not presumption is overcome. And then with torture, whether or not all the factors are outweighed by relocation arguments. And in this case, that simply did not happen and it should have happened. The petitioner should have been accorded an opportunity to go to that next step, that after the harm that he clearly suffered based on his credible testimony. Didn't he go to Canada first? Yes, Your Honor. I believe he went to several. Why did he stay there? Why did he come down here? I don't know, Your Honor. Maybe he had connections in the United States. I have no, I cannot speak to that. I do not believe it's in the record. You aren't his counsel. Exactly. Your Honor, I don't know what the, I don't know what his motivation was. All I can say is that his credible testimony establishes that he suffered harm and he should be able to get to that next step of whether or not he is entitled to forms of relief for which he applied, whether or not he has a presumption which is not rebutted by the record, or whether or not there are relocation arguments that negate his eligibility for these forms of relief. And he should have been given that opportunity. Thank you, Counsel, for the questions. The case has been submitted. Thank you both for your arguments. And we will be in recess for the morning. All rise.
judges: Farris, Beezer, Thomas